DANIEL SHEA, Appellant, v. THE CATHOLIC SOCIETY OF WEBSTER CITY, IOWA, Appellee.

**Conveyances:** MENTAL CAPACITY: UNDUE INFLUENCE: EVIDENCE. A voluntary conveyance of property by one mentally competent and without undue influence will not be disturbed by the court. In this case the evidence is held insufficient to show either a lack of mental capacity or undue influence.

*Appeal from Hamilton District Court.*—HON. R. M. WRIGHT, Judge.

MONDAY, APRIL 11, 1910.

ACTION to set aside a deed and to quiet title to real estate.   The bill was dismissed, and plaintiff appeals.— *Affirmed.*

*D. C. Chase,* for appellant.

*Wesley Martin,* for appellee.

WEAVER, J.—Plaintiff is the only heir of James Shea, deceased.   In his lifetime James Shea was the owner in fee of certain residence property in Webster City.   He was a communicant of the Catholic Church, and attended its service in that city.   On January 25, 1902, he executed a deed for said property to the defendant above named, and delivered it to the priest in charge, who caused it to be recorded.   In May, 1905, he was adjudged insane by the commissioners of Hamilton County, and placed under the care and custody of Father O'Brien, the priest of that parish.   Later he was cared for at a Catholic hospital in the city of Dubuque, where he died in the year 1907, aged about seventy-five years.   The property in controversy was the largest item of his estate, and in the fall of 1904 he made a will leaving all his property to Father O'Brien.   The record does not disclose whether this instrument was ever probated.   It is the claim of plaintiff that at the date of the will James Shea was of weak, if not of unsound, mind, and that he was very sick and supposed to be about to die, in which condition he was led or induced to make the conveyance by the undue influence of the priest who attended him and administered to his spiritual needs.   After hearing considerable evidence on both sides, the trial court found that the charge of mental incompetency and undue influence had not been sustained, and dismissed the bill.

Upon careful consideration of the record, we conclude that the finding of the trial court should not be disturbed. At the date of the deed James Shea was only about seventy years old, an age by no means so great as in itself to afford presumption of serious failure of his mental powers. Several witnesses testify to some lapse in his mental strength at and prior to the date of making the deed, but none of them put the conclusion very strongly. Reduced as near as possible to a single expression, the evidence on part of plaintiff fairly tends to show some weakness or childishness of mind, resulting possibly from the weakening of his physical powers and excess in the use of intoxicants, but not such a failure as to incapacitate him for ordinary business transactions. Of his condition at the very time and place of making the deed none who were present give evidence tending to show lack of capacity on his part. The notary who prepared the conveyance and took the acknowledgment says he appeared all right, and talked rationally. The physician who attended him in that sickness considered him rational. After he recovered from his sickness, he spoke to a lawyer friend, telling him he had conveyed the property to the church, asked if it would be subject to taxation, and expressed regret that the gift had not been in the form of money. The lawyer discovered no sign of mental failure. Altogether we think there is a decided absence of proof of mental incompetency at the time in question.

Upon the charge of undue influence the lack of evidence is even more apparent. It is true the priest was in a position to exercise a powerful influence over the grantor's mind, and, if there were any showing that he abused the confidence reposed in him to induce his parishioner to make the deed, when, if left free to act for himself, it would not have been made, we should not hesitate to reverse. But there is no testimony tending to show request, persuasion, or command on the part of the priest, and all his acts so far as revealed in the record were entirely consistent

with the simple discharge of the kind offices due from a clergyman to a sick member of his flock. So, also, if we assume that the burden is on the defendant to negative the exercise of undue influence, we are of the opinion that such burden is fully satisfied by the affirmative showing made by the witnesses having personal knowledge of the circumstances attending the execution and delivery of the deed. That the deceased should have made the church the beneficiary of his bounty is not altogether strange. It incidentally appears that his wife had separated from him some years before. His son had left home when seventeen years old, and, while returning occasionally to visit his father, the tie between them naturally was not of the strongest, and the church in whose faith he was born doubtless came to seem the only home he had left, and its ministering servants his nearest friends.

The law will not justify us in interfering with his voluntary dispositions of his property, and the decree of the district court must be *affirmed*.